Muhammad Ahmad Abdallah AL–ANSI, et al., Petitioners,

v.

Barack H. OBAMA, et al., Respondents.

Civil Action No. 08–1923 (GK).

United States District Court, District of Columbia.

Aug. 20, 2009.

Emmet J. Bondurant, Lisa R. Strauss, Ronan Patrick Doherty, Michael B. Terry, Bondurant, Mixson & Elmore, LLP, Atlanta, GA, Pardiss Kebriaei, New York, NY, for Petitioners.

John Joseph Siemietkowski, Terry Marcus Henry, August Edward Flentje, David Hugh White, John Hunter Bennett, Julia A. Berman, Patrick D. Davis, Timothy Stilke Laffredi, U.S. Department of Justice, Washington, DC, for Respondents.

### ORDER

GLADYS KESSLER, District Judge.

A Motions Hearing was held in this case on August 17, 2009, which took place in a sealed courtroom due to the discussion of classified information. Upon consideration of Petitioner Al–Ansi's Motion to Compel Discovery and Production of Classified Information [Dkt. Nos. 99/100], the Opposition, Reply, representations of the parties, and the entire record herein, it is hereby **granted in part and denied in part.**

Because of the very large number of discovery requests made by Petitioner, counsel were asked to focus their arguments on the following major substantive issues in dispute: 1) the status of the Guantanamo Review Task Force ("GRTF"), 2) the scope of certifications of provision of exculpatory information provided by the Government,[1] 3) medical records of Petitioner and his accusers, 4) bounties, 5) two depositions sought by Petitioner, 6) statements of Petitioner as well as his accusers, 7) photographs of Petitioner, and 8) the relevance of Petitioner's allegations of torture, and documentation relevant to those allegations. Counsel fully addressed these issues and were given the opportunity to raise any other issues, including those which had been covered in their pleadings.

Based upon the arguments of counsel, the Case Management Order ("CMO") of February 12, 2009, the persuasive decisions of other judges on this District Court, and the applicable case law from the Supreme Court and our Court of Appeals for this Circuit, the Court reaches the following conclusions.

### I. Automatic Discovery

As to Petitioner's requests under § I.E.1 of the CMO, it is hereby

---

**1.** Despite the Government's representations at the hearing about the completeness of its certifications, it is still less than clear to the Court whether it has certified that it has complied with many of the discovery requests made by Petitioner. The Government should feel free to inform the Court as to any of the orders contained herein which it believes it has already certified compliance with.

■ **ORDERED,** that Request No. 1 is **denied.** Petitioner requests "[a]ny documents or objects in the Government's possession that are referenced in the factual return." The request sweeps far too broadly, and does not fit under the parameters of § I.E.1; and it is further

■ **ORDERED,** that Request No. 2 is **denied** as formulated. Petitioner requests "[a]ll statements, in whatever form, made or adopted by Petitioner that relate to the information contained in the factual return." Petitioner is entitled to all statements, "in whatever form," that he made or adopted, which relate to any information contained in the Factual Return upon which the Government relies to justify his detention. *See Zaid v. Bush*, 596 F.Supp.2d 11 (D.D.C.2009); and it is further

■ **ORDERED,** that Request No. 3 is **denied** as formulated. Petitioner requests "[i]nformation about the circumstances—whether coercive or not—in which such statement[s] of the Petitioner were made or adopted." The Government is required to produce "circumstances information" only for those statements upon which the Government relies.

II. *Additional Discovery and Requests for Additional Exculpatory Evidence*

As to Petitioner's requests under §§ I.D.1 and I.E.2 of the CMO, it is hereby

■ **ORDERED,** that Request No. 4 is **granted in part and denied in part.** Petitioner requests "[a]ll reports[,] interviews, interrogations, and statements (including tapes, transcriptions[,] and original notes) referring to or discussing Petitioner, whether referenced in the factual return or not." The Government is required to disclose all reports, interviews, interrogations, and statements—including tapes, transcripts, and original notes—that refer to or discuss Petitioner, provided that these items contain information that the Government relies on to justify detention.

This requirement covers negative identifications provided by any other detainees who could not identify Petitioner as an al-Qaida bodyguard, a participant in battle at Tora Bora or elsewhere, or an individual who fled or was captured with a group of alleged al-Qaida bodyguards. Such failures to identify, if made, would constitute exculpatory information under § I.D.1; and it is further

■ **ORDERED,** that Request No. 5 ("[a]ll prior and subsequent reports, interviews, interrogations, and statements (including tapes, transcriptions[,] and original notes) of any witness identified in response to Request No. 4 (whether referenced in the factual return or not)") is **denied** as over-broad; and it is further

■ **ORDERED,** that Interrogatory No. 1 and Request No. 6 are **denied,** as Petitioner has withdrawn them; and it is further

■ **ORDERED,** that Request No. 7 is **denied.** Petitioner requests "[a]ll information concerning whether the declarants in the interviews and statements sought in Requests No[s]. 4 and 5 have been released or are subject to plans for release." Under § I.E.2, Petitioner has not adequately explained how such evidence would demonstrate that his detention is unlawful. Second, under § I.D.1, the link between the information sought and the justification for Petitioner's detention is too attenuated to constitute exculpatory evidence. Finally, under § I.E.2(4), the requested discovery would unduly burden the Government and very possibly interfere with delicate negotiations with other countries; and it is further

■ **ORDERED,** that Request Nos. 8–10 are **granted in part and denied in part.**[2] Request Nos. 8 and 9, and the portion of No. 10 that refers to audio or video tapes of CSRT and ARB proceedings, are **denied.** Under § I.E.2, the disclosure sought is too broad, and not narrowly tailored. Moreover, Petitioner has already been given a significant number of documents pertaining to the CSRT and ARB proceedings. While the Government is absolutely required to disclose, under § I.D.1, any exculpatory evidence to be found in those proceedings, comprehensive disclosure of all of those proceedings is unjustified because the conclusions reached in those proceedings are not relevant to what must be decided in this litigation, namely the lawfulness of his continued detention.

■ As to the requested interviews or interrogations of Petitioner, the request is **granted,** but only as to statements in the Factual Return upon which the Government relies; and it is further

**ORDERED,** that Request No. 11 is **granted in part.** Petitioner requests "[a]ll documents concerning the medical treatment of Petitioner since he has been in United States custody, including but not limited to all medical records and psychological records, following his torture in Kandahar, and all medical records [redacted]

■ Petitioner is entitled to medical and psychological records from 2001–2004, because they may provide exculpatory information relating to torture, whose continuing impact may have affected the seven statements given by Petitioner upon which the Government relies; and it is further

**ORDERED,** that Request Nos. 12 and 14–21 are **granted in part and denied in part.** With some minor variations, the requests seek information about nine witnesses[3] relied upon by the Government, including "all medical records showing mental instability or physical illness from the time of capture through the present (or date of release); all statements, interviews, memoranda, recordings, and interrogation reports of [the witness]; all records of or memoranda concerning the torture or use of harsh interrogation tactics on [the witness]; any documents concerning incentives, rewards or plans for release for [the witness]; and all documents concerning the credibility of [the witness'] accusations against other detainees, including but not limited to statements made by other detainees."

■ As formulated, the request is far too broad, open-ended, and not narrowly tailored under § I.E.2. The Government is required to produce all medical records showing mental instability or physical illness from the time of capture through the time that the witness gave his most recent inculpatory statement upon which the Government relies. The Government must also produce all records or memoranda of torture concerning abusive interrogation tactics for that period, and all documents concerning the credibility of the witnesses'

---

**2.** Request No. 8: "All classified information reviewed by the Combatant Status Review Tribunal in making the determination that Petitioner was an 'Enemy Combatant.' "

Request No. 9: "All classified information reviewed by the Administrative Review Board in making the determination that the continued detention of Petitioner is necessary."

Request No. 10: "Any audio or video tapes of Petitioner's CSRT proceeding, Administrative Review [B]oard Proceedings, and interviews or interrogations of Petitioner."

**3.** The nine witnesses are [redacted]

accusations against Petitioner or any other detainees; and it is further

ORDERED, that Interrogatory No. 2 [4] and Request No. 13 are **denied**. Petitioners ask that the Government "describe the circumstances under which [redacted] made an 'in person' identification of Petitioner and produce all interview notes, memoranda, and documents concerning the same. (Factual Return, Narrative ¶ 16; [redacted]."

 The Government claims that it has already searched for, located, and produced all reasonably available evidence in response to this request. The Government is required to file a sworn certification to that effect, or respond to the request; and it is further

ORDERED, that Request No. 22 is **denied**. This request states, "[t]he Government relies on the following reports which even in their classified form remain highly redacted. Please produce unredacted copies of the following documents relied upon by the Government: (a) [redacted] (b) [redacted], (c) [redacted]

 The Government is not relying upon the redacted information, and therefore need not produce unredacted versions of the reports; and it is further

 ORDERED, that Interrogatory No. 3 and Request No. 23 are **granted**. Petitioner requests that the Government "identify the source of information in the following intelligence reports and produce any documents or memoranda reflecting on the source's credibility: (a) [redacted], (b) [redacted]." [5] Petitioner is not seeking the redacted information, he is seeking the source for that portion of the statements

which is not redacted and upon which the Government does rely; and it is further

 ORDERED, that Interrogatory No. 4 and Request No. 24 are **denied**. Petitioner requests that the Government "identify the source(s), author(s), and translators involved in the creation of the document appended to the Factual Return: [redacted]" and "produce all documents, tapes, photographs, or interview notes supporting the [redacted] and all 'pertinent information collected concerning source and source family passed to the FBI [redacted] and is available on request,' as stated in that document;" and it is further

 ORDERED, that Request No. 25 is **granted**. Petitioner seeks production of [redacted] and any documents or evidence implicating Petitioner as being [redacted] This document is the only one on which the Government relies to prove that Petitioner received combat training. Obviously, any impeachment of this document could, under § I.E.2, produce evidence that undermines the Government's claim of lawful detention. The request is narrowly tailored and specifies the particular discovery sought; and it is further

 ORDERED, that Request No. 26 is **denied**. Petitioner requests "[a]ll information relating to the United States['] use of bounties to capture individuals in connection with the hostilities in Afghanistan after September 11, 2001." The request sweeps far too broadly; and it is further

ORDERED, that Interrogatory No. 5. and Request No. 27 are **granted**. Petitioner requests that the Government "identify and describe any payments or bounties that were made in connection

---

4. This interrogatory was mis-labeled as "Interrogatory No. 1" in Appendix A to Petitioner's Motion.

5. Petitioner mistakenly included two requests for the same document in Appendix A to its Motion. That duplicative request has been omitted.

with the capture of Petitioner and/or the transfer of Petitioner to U.S. custody. Please describe the circumstances of any such payments, including the name of the recipient and the amount of the payment and any supporting documentation of such bounty."

■ Under § I.D.1 of the CMO, such information qualifies as exculpatory evidence. *See* Order at 3–4, *Abdah v. Obama,* Civ No. 04–1254(HHK) (D.D.C. Apr. 8, 2009) [Dkt. No. 477]; and it is further

■ **ORDERED,** that Interrogatory No. 6 and Request Nos. 28 and 29[6] are **denied.** The Government claims that it has already searched for, located, and produced all reasonably available evidence in response to this request. The Government is required to file a sworn certification to that effect, or respond to the request; and it is further

**ORDERED,** that Request No. 30 is **granted in part and denied in part.** Petitioner requests "[a]ny documents, including but not limited to any interrogation logs or interrogation plans that list or describe the date, time, place or circumstances of any interrogations of Petitioner, all Analyst Support Packages for Mr. al Ansi (including the most up-to-date support package)."

■ The Government is required to disclose any interrogation logs, if they exist, that list or describe the date, time, or place of any interrogations of Petitioner; and it is further

■ **ORDERED,** that Request No. 31 is **denied.** Petitioner requests that the Government "produce all documentation of the Government's interrogation techniques and torture of Petitioner while detained in Kandahar and Guantanamo Bay, Cuba." The Government claims that it has already searched for, located, and produced all reasonably available evidence in response to this request. The Government is required to file a sworn certification to that effect, or respond to the request; and it is further

■ **ORDERED,** that Request No. 32 is **denied.** Petitioner seeks "[a]ll communications between Government interrogators and their superiors (whenever located) about the interrogation of Petitioner." The request is open-ended and sweeps too broadly; and it is further

■ **ORDERED,** that Request No. 33 is **granted.** Petitioner is entitled to "[a]ny documentation of Petitioner's travel from Yemen to Pakistan and Afghanistan, including passport and visa documentation;" and it is further

■ **ORDERED,** that Request No. 34 is **denied,** for failure to comply with the requirements of § I.E.2(3). In asking for "[a]ny documentation or items (or a log or inventory of such items) taken from Petitioner since the time of his capture in 2001," Petitioner provides no indication of why, if granted, such a request would pro-

---

6. Request No. 28: "All information and documentation about the circumstances of Petitioner's 'arrest' or 'capture' (as alleged in the Factual Return) in Pakistan and the circumstances of Petitioner's movement between detention facilities from the date Respondents contend he was 'captured' until he was transferred to Guantanamo. This request encompasses, but is not limited to, documents related to Petitioner's arrest at the Pakistani border, the Pakistani detention facility, and

his detention under U.S. custody in Kandahar."

Interrogatory No. 6 and Request No. 29: "Describe the circumstances of Petitioner's arrest and produce all documents and evidence that Petitioner was 'captured with approximately [redacted] other members of Usama bin Laden's security detail, including several bodyguards,' paragraphs 33 and 44 of Respondents' Narrative to the Factual Return Narrative."

duce evidence that his detention is unlawful; and it is further

■ **ORDERED,** that Request No. 35 is **denied.** Petitioner requests "[a]ll documents proving or disproving that Petitioner attended the Dimaj Institute or personally knew Shaykh Muqbil al Wadi." The Government claims that it has already searched for, located, and produced all reasonably available evidence in response to this request. The Government is required to file a sworn certification to that effect, or respond to the request; and it is further

**ORDERED,** that Request No, 36 is **granted in part.** Petitioner [redacted] and it is further

■ **ORDERED,** that Request Nos. 37 and 38 [7] are **denied.** The Government claims that it has already searched for, located, and produced all reasonably available evidence in response to these requests. The Government is required to file a sworn certification to that effect, or respond to the request.

■ To the extent that the Government is arguing that the information sought under Request No. 37 would not be relevant, and therefore was not provided, the Petitioner's request is granted, under § I.E.2; and it is further

**ORDERED,** that Request No. 39 is **denied** without prejudice. Petitioner requests production of "any documentation, including employment records of termination, concerning the skill and expertise of the following translators used by Respondents: [redacted]."

■ Petitioner has not identified any specific words, phrases, or statements from any evidence upon which the Government relies in the Factual Return that he alleges was not properly translated, summarized, or paraphrased. Consequently, the requirement in § I.E.2(3) of the CMO has not been satisfied; and it is further

**ORDERED,** that Request No. 40 is **denied.** Petitioner seeks production of "the Justice Department's Office of Professional Responsibility (OPR) investigating the conduct of the Bush Administration lawyers' torture memos."

■ The request is over-broad and open-ended, and therefore fails to comply with § I.E.2(3). Petitioner fails to demonstrate why this information would specifically address the lawfulness of Petitioner's detention; and it is further

■ **ORDERED,** that Request No. 41 is **denied.** In seeking production of "Inspector General John L. Helgerson's Report issued on May 7, 2004," Petitioner again fails to demonstrate, under § I.E.2(3), why this report would specifically address the lawfulness of Petitioner's detention. The Report spans thousands of pages, and Petitioner does not explain how the critique of the legality of certain interrogation methods could rebut the Governments's factual basis for its case against Petitioner; and it is further

■ **ORDERED,** that Request No. 42 is **denied,** as it is duplicative of Request No. 40; and it is further

**ORDERED,** that Request No. 43 is **granted in part and denied in part.** Petitioner seeks "any documents drafted by

---

**7.** Request No. 37: "All documents from the Pakistani police station that concern the circumstances of Petitioner's 'arrest' and all documents from the Pakistani detention facility in Peshawar where he was detained prior to being turned over to U.S. Custody."

Request No. 38: "Please produce any agency evaluations of the credibility of the information contained in any interrogation report upon which Respondents rely."

Government officials, employees, or outside expert consultants that question the means used or reliability of information obtained as a result of any 'harsh' interrogation techniques of the types described in the CIA Torture Memos or which were used on any of the detainees on whose statements Respondents rely to support the claim that Petitioner was an enemy combatant or to otherwise justify his detention for the past eight years."

■■■ As formulated, the request is not narrowly tailored, and is open-ended. The Government is, however, required to disclose what, if any, requests were made by interrogators to use specific harsh interrogation techniques for which, explicit permission was required in interrogating detainees upon whose accusations the Government relies in this case; and it is further

**ORDERED,** that Request No. 44–46 are **denied,** as Petitioner has withdrawn them; and it is further

8. The requests in this interval were mis-numbered, as there were two Request No. 48s. The ruling applies to both of those requests.

9. Petitioner asks the Government to admit or deny the following:
 1. Prior to traveling to Afghanistan, Muhammad Ahmed Abdallah al Ansi lived in Sanaa, Yemen.
 2. There is no evidence that Muhammad Ahmed Abdallah al Ansi ever committed any acts hostile to the United States during his years in Yemen.
 3. There is no evidence that Muhammad Ahmed Abdallah al Ansi participated in any violent act during his years in Yemen.
 4. There is no evidence that Muhammad Ahmed Abdallah al Ansi was arrested or convicted of any crime during his years in Yemen.
 5. There is no evidence that Muhammad Ahmed Abdallah al Ansi was a member of any extremist or anti-United States organization during his years in Yemen.
 6. There is no evidence that Muhammad Ahmed Abdallah al Ansi engaged in any act or made statements hostile to the United

■■■ **ORDERED,** that Request Nos. 47–50 [8] are **denied,** under § I.E.2 of the CMO. They are open-ended and would unduly burden the Government.

### III. Request for Admissions

As to Petitioner's Request for Admissions [9] ("RFAs"), it is hereby

■■■ **ORDERED,** that the Government must respond to RFAs 2–9. The Government's current responses to RFAs 2–9 are evasive and disingenuous. The Government is to squarely admit or deny whether "there is evidence" supporting the particular request for admission. If there is "no evidence" regarding a specific request for admission, the Government is to say so.

### IV. Supplemental Request for Production

In Appendix B to Petitioner's Motion, he includes an additional request for production.[10] It is hereby

States or his allies during his years in Yemen.
 7. Muhammad Ahmed Abdallah al Ansi was taken into custody by the Pakistani police, not the United States military.
 8. There is no evidence that Muhammad Ahmed Abdallah al Ansi had a weapon of any kind at the time he was taken into custody.
 9. No physical evidence was obtained from Muhammad Ahmed Abdallah al Ansi at the time he was taken into custody that indicated he was engaged in any unlawful activity or activity hostile to the United States or its allies.

10. Supplemental Request: "Any photographs documenting the abuse of prisoners in Iraq and Afghanistan by United States military personnel, which are the subject of litigation between the Government and American Civil Liberties Union and which are referenced in the May 14, 2009, New York Times article attached hereto, in which the Petitioner, Muhammad Ahmad Abdallah al Ansi (ISN 29), or any of the detainees upon whose statements

■ **ORDERED,** that the supplemental request is **denied.** It would be inappropriate for this Court to issue any order which could affect or interfere with another judge's handling of a case on his or her docket. It would be particularly inappropriate as to the "litigation between the Government and American Civil Liberties Union," given the complexity and sensitivity of that litigation, with which that judge is undoubtedly fully familiar and with which this Court has no familiarity.

### V. *Depositions and/or Interviews*

As to Petitioner's request to take depositions or conduct interviews of two central Government witnesses, upon whose accusations the Government relies to justify detention, it is hereby

■ **ORDERED,** that the request is **granted in part and denied in part.** Petitioner has demonstrated restraint in asking for access to only two of the multiple accusers. Moreover, those two detainees have already retracted the substance of their accusations against Petitioner. Petitioner's counsel has already received permission from counsel for one of these detainees to interview him, and has been in touch with counsel for the other detainee and has reason to believe that permission will be given to interview him. In the context of this request, no detainee may be interviewed without the permission of his counsel.

Petitioner has assured the Court that his counsel will make all arrangements to coordinate any procedure allowed by the Court. Counsel correctly point out that the only difference between such an interview and a regular counsel-client meeting at Guantanamo Bay would be the addition of the detainee's own counsel. There is no persuasive evidence that the addition of

that one individual would either compromise security or cause undue logistical burdens to the Government.

Finally, the Court is permitting a witness interview rather than the deposition that Petitioner prefers. The Court wishes to make the proceedings as simple and uncomplicated as possible, rather than adding another individual to the proceeding (i.e., the court reporter) and additional equipment which could be prove to be problematic. All counsel will of course remain subject to the existing requirements and prohibitions contained in the Protective Orders, meaning that no classified information may be shared by any counsel with the detainee being interviewed. Petitioner's counsel has assured the Court that she will clear any problematic questions and/or subject-matter areas with the Government.

---

Respondents rely in the Factual Return are depicted."